**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KARL C. WETHERBY,**

     **Petitioner,**

  **v.**

**WARDEN, NOBLE
CORRECTIONAL INSTITUTION,**

     **Respondent.**

**Case No. 2:14-cv-00361
Judge Marbley
Magistrate Judge King**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition,* (ECF No. 1), Respondent's *Return of Writ,* (ECF No. 12), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## Facts and Procedural History

Petitioner was charged in the Licking County Court of Common Pleas with obstructing official business in violation of O.R.C. § 2921.31, with firearm specifications, inducing panic in violation of O.R.C. § 2917.31, with firearm specifications, and aggravated menacing in violation of O.R.C. § 2903.21(A). The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> On September 23, 2010, officers from the Licking County Sheriff's Department went to Jason Lee's home at 9151 Linville Road, Newark, Ohio, to serve a writ of possession FN1. Deputies spoke to Lee and explained that his property had been sold at sheriff's sale and he needed to make arrangements to vacate. They agreed on October 11, 2010 as the date by which Lee would vacate, but Lee stated that he was going to hire an attorney to have the sale set aside. Wetherby is a friend of Lee's who was staying on the property in a camper in the driveway. (1T. at 244).

1

FN1. See, State v. Lee, 5th Dist. No. 11–CA–0076, 2012–Ohio–2856.

Deputies did not return on October 11, 2010, because a court action was pending to review the propriety of the sale. However, on October 20, 2010, the court denied a stay on the writ of possession. Deputies again spoke with Lee at his home on October 25, 2010, and told him he needed to vacate on October 27, 2010.

At about 9:30 a.m. on October 27, deputies arrived at Lee's home. Lee was standing on the front sidewalk. He yelled something to the officers about having sold his house to someone else and told them to leave. Lee then ran in the front door of the home. Officers followed Lee to the front porch but Lee would not come out or let them in the house. He yelled through the front door that he was not coming out.

Deputies returned to their vehicle to telephone Lee's attorney, and called their supervisor, Captain Bruce Myers. Deputy Tim Caldwell went around to the back door to attempt to talk to Lee. The blinds covering the French doors on the back porch flew open and the faces of Lee and another man, later identified as Wetherby, appeared against the window. The two men began yelling and screaming at Deputy Caldwell. The corners of their mouths were "full of white stuff" from yelling and screaming and they were spitting on the window.

When Captain Bruce Myers arrived, he went to the back door to speak with the pair. He advised Lee through the door that Lee's attorney was on his way. Captain Myers saw an arm and a hand come around the side of the blinds covering the door. The hand was holding a pistol.

Much of the staff of the Sheriff's Department had been dispatched to an incident involving a van, containing a pipe bomb, which crashed into a church following a pursuit earlier that morning. At least 25 employees of the Sheriff's Department and fire department were dispatched to Lee's home, including the SWAT team and the hostage negotiating team.

Lee would not speak to the hostage negotiators through a "throw phone," which is the preferred method of communicating so that all communications can be monitored by the police. However, he agreed to speak to Misty Van Balen through a cell phone.

2

Lee repeatedly told her that he wanted to die, that he was going to kill whoever entered the residence first and then kill himself. He also told her that he and Wetherby had a plan to kill each other. He told her that he could see the officers through the window and could take them out. He intended to die and take out as many people as he could. Lee would speak calmly with her for a while, then start yelling and hang up. During the telephone negotiations, Wetherby can be heard yelling in the background. Wetherby is speaking so loudly that the deputy told Lee to "tell him to shut up. I can't hear you." (1T. at 244–245). Throughout the negotiations, Lee was asking Wetherby for his advice. Several times Lee halted the discussions in order to seek Wetherby's advice. (1T. at 245).

Lee and Wetherby informed the negotiating deputies that they wanted to speak to the news media. Accordingly, a meeting was arranged with a local news team. Lee was afraid to leave the residence. At about 4:15 p.m., Wetherby agreed to come out unarmed and speak to the media. Wetherby was taken into custody without incident at the conclusion of the interview with the news team. Lee came out of the house at 6:30 p.m.

During a subsequent search of the house, officers found three firearms in a cabinet in a basement office, a loaded firearm in a garage, a revolver in the first floor dining room, a rifle leaning against an end table in the living room, and a rifle in the corner of a first floor bathroom.

The jury convicted Wetherby on all counts. At sentencing, the trial court merged the firearm specifications. The court further merged the Obstructing Official Business contained in count one with the Inducing Panic charge found in count two. The state elected to proceed on count one for sentencing. The court sentenced Wetherby to an aggregate sentence of three years and six months.

Assignments of Error

Wetherby raises four assignments of error:

"I. THE CONVICTIONS WERE BASED ON INSUFFICIENT EVIDENCE AND WERE OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

"II. APPELLANT'S ACTIONS WERE PRIVILEGED UNDER OHIO LAW AND THE STATE AND FEDERAL

3

> CONSTITUTIONS AND THUS COULD NOT FORM THE BASIS FOR CRIMINAL LIABILITY THEREUNDER.
>
> "III. THE JURY INSTRUCTIONS WERE PREJUDICIALLY INSUFFICIENT UNDER OHIO LAW AND THE STATE & FEDERAL CONSTITUTIONS.
>
> "IV. APPELLANT WAS PREJUDICIALLY DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE STATE AND FEDERAL CONSTITUTIONS."

*State v. Wetherby*, No. 12-CA-69, 2013 WL 4028681, at *1-2 (Ohio App. 5th Dist. Aug. 1, 2013). On August 1, 2013, the appellate court reversed Petitioner's conviction on inducing panic, but otherwise affirmed his convictions, and remanded the case to the trial court. *Id*. Petitioner's sentence remained unchanged. (ECF No. 12-1, PageID# 230.) On December 24, 2013, the Ohio Supreme Court dismissed the appeal. *State v. Wetherby*, 137 Ohio St.3d 1442 (Ohio 2013).

On April 18, 2014, Petitioner filed this action, alleging that the evidence is constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence (claim one); that his actions were privileged and therefore could not form the basis for criminal liability (claim two); that he was denied a fair trial due to improper jury instructions (claim three); and that he was denied the effective assistance of counsel (claim four). Respondent contends that Petitioner's claims are procedurally defaulted or without merit.

**<u>Standard of Review</u>**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the

'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, -- U.S.--, --, 134 S.Ct. 10,16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

   The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

. 28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an

"unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, -- U.S. --, --, 131 S.Ct. 1388, 1398 (2011). "'In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable,' not merely 'incorrect or erroneous.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21, 123 S.Ct. 2527 (2003) (internal quotation marks omitted) (quoting *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). *See also Harrington,* 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer,* 588 F.3d 328, 341 (6th Cir.2009) ("[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)). *See also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir.2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" in evaluating the reasonableness of state court's decision). In evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based

only on the record that was before it at the time that the state court rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399.

## Claims One and Two

In claim one, Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions, and that his convictions are against the manifest weight of the evidence. Petitioner contends that police acted unofficially and presented "illegal court documents that are. . . a fraud" and that police acted as "rogue agents with the threat and action of force including removal by gun-point from the property owner's rightful property." *Petition* (ECF No. 12), PageID# 60. Petitioner maintains that he merely aided another in preventing a hostile takeover by police. In claim two, Petitioner similarly asserts that he committed no crime because his actions were privileged under Ohio law. *Id.* at PageID# 7. This Court will liberally construe the *pro se Petition* and will consider both of these arguments together.

The state appellate court rejected Petitioner's claims, reasoning in relevant part as follows:

> Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.; see also McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.
>
> ***
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is

7

consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, "Appellate Review," Section 60, at 191–192 (1978).

1. Obstructing Official Business.

R.C. 2921.31, Obstructing Official Business provides,

(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

In the case at bar, Licking County Sheriff's officers were attempting to enforce a Writ of Possession resulting from a foreclosure action. No evidence was presented during trial that Wetherby had an ownership interest in the subject property. No evidence was presented that Wetherby had any cognizable interest in the property pursuant to any written agreement. The only evidence presented is that Lee permitted Wetherby to stay in a camper on the property. No evidence was presented as to the ownership of the camper. Thus, the evidence presented during trial indicates that Wetherby was no more than a guest of Lee.

In the case at bar, Lee was to vacate the premises taking whatever he would like. The new owners gave Lee an additional thirty days to remove the remainder of his property. (1T. at 116). Further, Lee was aware that his application for a stay had been denied. (*Id.* at 120–121, 461 N.E.2d 1273). The evidence in this case included copies of the Writ of Possession as well as the civil court's judgment entry refusing to stay that Writ. Those documents clearly show that Lee was a party to that foreclosure action. Accordingly, Wetherby as a mere guest was not privileged to use force or threaten the use of force to resist the Licking County Sheriff's officers from enforcing a Writ of Possession resulting from a foreclosure action.

8

In the case at bar, the state presented evidence that, at the very least, Wetherby aided and abetted Lee in preventing the deputies from the performance of their lawful duties.

Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense. *See, State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *State v. Mendoza*, 137 Ohio App.3d 336, 342, 738 N.E.2d 822 (2000), quoting *State v. Stepp*, 117 Ohio App.3d 561, 568–569, 690 N.E.2d 1342 (1997).

R.C. 2923.03 provides:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

* * *

(2) Aid or abet another in committing the offense.

R.C. 2923.03(F) states, "A charge of complicity may be stated in terms of this section, or in terms of the principal offense."

The Supreme Court of Ohio clarified Ohio's position on the issue of complicity in *State v. Perryman* (1976), 49 Ohio St.2d 14, 358 N.E.2d 1040, *vacated in part on other grounds sub nom, Perryman v. Ohio* (1978), 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156. The court unequivocally approved of the practice of charging a jury regarding aiding and abetting even if the defendant was charged in the indictment as a principal. *Id.* The court held that the indictment as principal performed the function of giving legal notice of the charge to the defendant. *Id.* Therefore, if the facts at trial reasonably supported the jury instruction on aiding and abetting, it is proper for the trial judge to give that charge. *Perryman, supra* at 27, 28.

*State v. Payton*, 8th Dist. Nos. 58292, 58346, 1990 WL 48952(Apr. 19, 1990).

R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in

terms of the principal offense. *United States v. McGee* 529 F.3d 691, 695 (6th Cir.2008); *State v. Herring*, 94 Ohio St.3d 246, 251, 762 N.E.2d 940, 949(2002); *State v. Keenan*, 81 Ohio St.3d 133, 151, 689 N.E.2d 929, 946(1998); *State v. Templeton*, 5th Dist. No.2006–CA–33, 2007–Ohio–1148, ¶ 63.

In this case, while inside the home, Lee displayed a firearm to the officers outside. The pair further made threats to shoot the officers and themselves. The deputies remained on the scene from 9:30 a.m. to at least 6:30 p.m.

Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that, at the very least, Wetherby aided and abetted Lee in committing the crime of obstructing official business. We hold, therefore, that the state met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support Wetherby's conviction.

\*\*\*

3. Aggravated Menacing.

Wetherby was also convicted of aggravated menacing. R.C. 2903.21, aggravated menacing provides,

(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family.

The crime of aggravated menacing is triggered by a threat that intimidates or causes fear or apprehension by the recipient. *State v. Schwartz,* 77 Ohio App.3d 484, 602 N.E.2d 671(12th Dist.1991). Such threats are not among the class of utterances that are protected by the First Amendment. *Mozzochi v. Borden*, 959 F.2d 1174 (2nd Cir.1992); *United States v. Khorrami*, 895 F.2d 1186 (7th Cir.1990); *United States v. Bellrichard*, 994 F.2d 1318 (8th Cir.1993).

In *State v. Millikin*, 1st Dist. Hamilton App. Nos. C030825, C–030826, 2004–Ohio–4507, the defendant was angry that motorists would move and drive around the barricades placed in front of his home because of road construction. The defendant parked his and another person's vehicles in front of his house, blocking the street. The police were called, and the defendant was told to move the

vehicles. The defendant was angry that the police were not enforcing the closing of the road. The state presented evidence that when the police arrived for the second time, the defendant appeared at the front door of his house, angry and intoxicated, carrying a shotgun and having a handgun tucked in the waistband of his pants. The appellate court upheld the defendant's conviction for aggravated menacing, stating that "Even though Millikin never pointed a gun at the police officers and did not verbally threaten them, in the entire context of the evening, it was reasonable to conclude that the police officers felt threatened and were fearful that Millikin would attempt to cause serious physical harm to them." *Id*. at ¶ 23.

In *State v. Terzo*, 12th Dist. Butler App. No. CA2002–08–194, 2003–Ohio5983, a Fairfield police officer responded to a report that a female was brandishing a firearm and trying to set fire to clothing she had thrown in the street. When the officer arrived, he observed the female sitting on the front porch holding a shotgun. The officer testified that the female raised the shotgun and aimed it at the officer. He testified that he drew his service revolver, fearing that the female intended to shoot. The female went back inside the house, put the gun down, and surrendered herself immediately. The appellate court upheld Terzo's conviction for aggravated menacing, stating that "The threat need not be verbalized; rather, the threat can be implied by the offender's actions. *City of Niles v. Holloway* (Oct. 3, 1997), Trumbull App. No. 96–T–5533, 1997 Ohio App. LEXIS 4517, 1997 WL 665974 citing *State v. Hoaglin* (Mar. 25, 1993), Van Wert App. No. 15–92–15, 1993 Ohio App. LEXIS 1718, 1993 WL 85643. And finally, while appellant [Terzo] also argues that she would have been unable to carry out the threat because the gun was not loaded, neither the intent nor the ability to carry out the threat is an element of the offense. *Dayton v. Dunnigan* (1995), 103 Ohio App.3d 67, 658 N.E.2d 806." *Id*. at ¶ 18, 658 N.E.2d 806.

In the case at bar, evidence was presented that the deputies had concerns for their safety. First, officers retreated from the front of the home where they were exposed when co-defendant Lee brandished a firearm. The officer who observed the gun being brandished retreated to a "safer location." He also yelled to his fellow officer that he saw a gun and told him to get off the porch. Moreover, a tactical, or SWAT team, was called in and a squad/medic was kept on stand-by throughout the ordeal.

Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a

reasonable doubt that, at the very least, Wetherby aided and abetted Lee in committing the crime of aggravated menacing. We hold, therefore, that the state met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support Wetherby's conviction.

\*\*\*

In his second assignment of error, Wetherby incorporates the arguments he previously made with respect to this first assignment of error. He contends in this assignment of error that his conduct was "privileged."

Wetherby's claim is essentially one of defense of property. Ohio law does not provide appellant the right to defend his property by threatening to shoot police officers who are there to execute a writ of possession issued by a court of law simply because he believes there were errors made in the civil proceeding that led to the sheriff's sale of his property. *State v. Lee*, 5th Dist. No. 11–CA–0076, 2012–Ohio–2856, ¶ 43.

In *State v. Burns*, 2nd Dist. No. 22674, 2010–Ohio–2831, the appellant argued that her conviction for obstructing official business was against the manifest weight of the evidence because the officer whom she impeded in his efforts to search her mother's home was there unlawfully, without a search warrant. The court rejected this argument, holding:

Appellant contests that Officer Wolpert was performing "lawful duties" when he entered her mother's house prior to obtaining a search warrant. Although an unlawful entry may result in the exclusion of evidence, "absent bad faith on the part of a law enforcement officer, an occupant cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances." *State v. Stevens*, Morgan App. No. 07–CA–0004, 2008–Ohio–6027, ¶ 37, quoting *State v. Paumbaur* (1984), 9 Ohio St.3d 136, 138, 459 N.E.2d 217. There is no evidence of "bad faith" on the part of Officer Wolpert. He explained that his reason for entering the home was to ensure the safety of all concerned and to ensure that evidence could not be removed or destroyed. Even if Officer Wolpert's entry had been unlawful under these particular circumstances, absent evidence of bad faith, Appellant was not justified in obstructing his efforts to secure the residence." *Id.* at ¶ 19, 459 N.E.2d 217.

> In the case at bar, there is absolutely no evidence that any of the officers acted in bad faith. To the contrary, the evidence unequivocally established that the sheriff's department had a writ of possession and a judgment of the court, dated October 20, 2010, denying Lee's motion for a stay on the writ of possession. Further, while a homeowner may say almost anything to officers in an attempt to persuade them not to enter, the Fourth Amendment does not grant a homeowner the right to use deadly force to resist an unlawful entry. *State v. McCoy*, 2nd Dist. No. 22479, 2008–Ohio–5648, ¶ 19. In the instant case, Wetherby's right to resist entry, even if the police were acting in bad faith, did not extend to a threat of deadly force and show of a firearm. *Lee, supra* at ¶ 47.

*State v. Wetherby*, 2013 WL 4028681, at *2-9.[1]

A claim that a Petitioner's convictions are against the manifest weight of the evidence cannot form the basis of federal habeas corpus relief.  Under Ohio law, a claim that a verdict was against the manifest weight of the evidence requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses in order to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, any claim that petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

However, before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319. To determine whether the evidence was sufficient to support Petitioner's convictions, this Court must view the evidence in the light most favorable to the prosecution. *See Wright v. West*, 505 U.S. 277, 296 (1992) (citing

---

[11] The Court has omitted the appellate court's discussion of Petitioner's conviction on inducing panic, since Petitioner's conviction on that charge was reversed.

*Jackson,* at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume - even if it does not appear on the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326).

Under the AEDPA, a state court's determination regarding a sufficiency of evidence claim is entitled a "double layer" of deference. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due the jury's finding of guilt because the standard, announced in *Jackson,* is whether, "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id. See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome. For the reasons detailed by the state appellate court, Petitioner has not done so here. Further, as to Petitioner's claim that he acted under privilege or without criminal liability, a "'federal court must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir.1985)).

Claims one and two are without merit.

**<u>Claim Three and Portions of Claim Four</u>**

In claim three, Petitioner complains that he was convicted on the basis of erroneous jury instructions.  Specifically, Petitioner contends that the trial court should have instructed the jury

that police acted unlawfully, and that his actions were privileged and were conducted in defense of property. *Petition* (ECF No. 1), PageID# 8. Petitioner did not raise this claim in the trial court and the state appellate court therefore considered the claim only for plain error. In claim four, Petitioner alleges that he was denied the effective assistance of trial counsel because, *inter alia*, his attorney failed to request jury instructions on the defense of privilege and failed to argue that Petitioner's convictions were invalid on this basis. *Petition* (ECF No. 1), PageID# 10.

A state criminal defendant with federal constitutional claims is required to first properly present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). Moreover, a petitioner must present the claim to the state courts in the way that state law requires. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).Where a petitioner has failed to properly present his claims in the state court and can now no longer do so, "there is a procedural default for purposes of federal habeas. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that

a state procedural rule was not satisfied, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985). Constitutionally ineffective counsel may constitute cause to excuse a procedural default of a separate claim if an ineffective assistance of counsel claim, sufficient to meet the *Strickland* standard, was itself  preserved for federal habeas review or otherwise satisfies the "cause and prejudice" standard for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 450-53 (2000). *See also Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir.2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

As noted *supra,* the state appellate court reviewed Petitioner's third claim only for plain error because Petitioner had failed to raise the issue at trial:

> Wetherby claims the trial court erred in not giving complete jury instructions. Specifically, Wetherby contends that it was plain error for the court not to instruct the jury on privilege, self-defense and imminent fear of serious physical harm with respect to aggravated menacing.
>
> The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3rd Dist.1993). In order to find an abuse of that discretion, we

must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983) Jury instructions must be reviewed as a whole. *State v. Coleman,* 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

Crim.R. 30(A) governs instructions and states as follows:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

Wetherby did not file a written request for specific jury instructions, and did not object to the trial court's jury instructions. Based upon his failure to proffer instructions or object to the instructions and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine. Therefore, for this court to reverse Wetherby's convictions, we must find that the trial court's procedure regarding its jury instructions was prejudicial. Crim.R. 52(B).

[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, 560 U.S. 258, 130 S.Ct. 2159, 2164,176 L.Ed.2d 1012 (Internal quotation marks and citations omitted). The Ohio Supreme Court pertinently addressed when structural error analysis should be used in *State v. Perry*,

17

We emphasize that both this court and the United States Supreme Court have cautioned against applying a structural-error analysis where, as here, the case would be otherwise governed by Crim.R. 52(B) because the defendant did not raise the error in the trial court. *See Hill*, 92 Ohio St.3d at 199, 749 N.E.2d 274; *Johnson*, 520 U.S. at 466, 117 S.Ct. 1544, 137 L.Ed.2d 718. This caution is born of sound policy. For to hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to encourage defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court - where, in many cases, such errors can be easily corrected.

101 Ohio St.3d 118, 802 N.E.2d 643, 2004–Ohio–297, ¶ 23. Thus, the defendant bears the burden of demonstrating that a plain error affected his substantial rights and, in addition that the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Perry*, 101 Ohio St.3d at 120, 802 N.E.2d 643. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *Perry, supra*, at 118, 802 N.E.2d at 646.

Under the circumstances of the case at bar, there is nothing in the record to show that Wetherby was prejudiced. As we discussed in our disposition of Wetherby's second assignment of error, neither Wetherby nor Lee's actions were privileged and neither was entitled to use force.

Aggravated menacing does not require an imminent fear of serious physical harm as suggested by Wetherby. Neither the intent of a defendant to carry out his threat nor his ability to do so are elements of the offense of aggravated menacing. *Dayton v. Dunnigan*, 103 Ohio App.3d 67, 71, 658 N.E.2d 806 (2nd Dist.1995). Even a conditional threat can constitute a violation of the menacing laws. *State v. Collie*, 108 Ohio App.3d 580, 582, 671 N.E.2d 338 (1st Dist.1996). What is necessary to establish the offense of menacing is the victim's subjective belief that the defendant can cause physical harm to herself, her immediate

> family, or her property. *State v. Klempa*, 7th Dist. Belmont App.
> No. 01–BA–63, 2003–Ohio–3482, ¶ 24.

*State v. Wetherby*, 2013 WL 4028681, at *10-12.

The United States Court of Appeals for the Sixth Circuit has held that plain error review by a state appellate court does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

> Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir.2004), *cert. denied*, 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith*, 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir.2001); *Stojetz v. Ishee*, 2006 WL 328155 *12 (S.D.Ohio Feb.10, 2006).

> A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams*, 380 F.3d at 968; *Hinkle*, 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle*, 271 F.3d at 244 (citing *Ylst, v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw*, 484 F.Supp.2d 753, 771 (N.D.Ohio 2007).  Even a state court's alternative dismissal on the merits does not forgive the waiver or otherwise revive the claim for purposes of habeas corpus review.  *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding"); *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) (where state court's dismissal of claim on merits constitutes an alternative holding, federal habeas court will consider the claim procedurally defaulted).

Because Petitioner failed to raise before the state trial court the issue presented in his third claim for habeas corpus relief, and because the state court of appeals reviewed this claim for only plain error, Petitioner has waived this Court's consideration of this claim unless he can show cause and prejudice for this procedural default.

As noted *supra,* a valid - and preserved - claim of ineffective assistance of counsel can excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446. In his claim four, Petitioner alleges that his trial counsel was ineffective because he failed to request jury instructions on the defense of privilege. Petitioner raised this claim in his direct appeal, but the state appellate court rejected this claim:

> A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).
>
> In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley*, 42 Ohio St.3d at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
>
> In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. Prejudice warranting reversal must be such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would "reasonably likely been different" absent the errors. *Strickland*, 466 U.S. 695, 696. A reasonable probability is a

probability sufficient to undermine confidence in the outcome. *Strickland, supra; Bradley, supra*.

The claims raised by Wetherby do not rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that Wetherby cites in support of his claim that he was denied effective assistance of counsel, we find Wetherby was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. Wetherby has failed to demonstrate that there exists a reasonable probability that, had trial counsel requested a jury instruction on privilege and argued insufficient evidence as he has suggested the result of the trial would have changed. As we have noted, any error in the procedure employed by trial counsel was harmless beyond a reasonable doubt.

*State v. Wetherby*, 2013 WL 4028681, at *12-13.

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). In order to establish the denial of effective assistance of counsel, the defendant must demonstrate that his attorney performed in a constitutionally deficient manner. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. at 687. The defendant also must show that he was prejudiced thereby. This requires showing that his attorney's errors were so serious as to deprive him of a fair trial, *i.e.,* a trial the result of which is reliable. *Id.*

Scrutiny of defense counsel's performance must be "highly deferential." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id* . To establish the second prong of the *Strickland* test, *i.e.*, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of

the proceedings would have been different.  *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* Because a petitioner must satisfy both prongs of *Strickland* in order to demonstrate ineffective assistance of counsel, should a court determine that a petitioner has failed to satisfy one prong, it need not consider the other.  *Id*. at 697. Petitioner has failed to meet this test.

The state appellate court held that neither Wetherby nor Lee's actions were privileged and that neither was entitled to use force.  Therefore, Petitioner would not have been entitled to jury instructions on privilege.  Further, the state appellate court held that the evidence was sufficient to sustain his convictions.  Under these circumstances, Petitioner can establish neither prong of the *Strickland* test of counsel ineffectiveness.

Therefore, Petitioner's claim, included in his fourth claim, of ineffective assistance of counsel by reason of his counsel's failure to request jury instructions on the defense of privilege and failure to argue that his convictions were invalid on this basis is without merit.  It follows, then, that this claim cannot serve to excuse Petitioner's procedural default of claim three.

## Remaining Claims in Claim Four

In claim four, Petitioner also alleges that he was denied the effective assistance of trial counsel because his attorney failed to request joinder of trials and failed to call witnesses. Petitioner also alleges the denial of the effective assistance of appellate counsel, arguing that he was denied meaningful access to appellate review because, essentially, the state appellate court denied his claims.

### Ineffective Assistance of Trial Counsel

Petitioner has waived his claim of ineffective assistance of trial counsel and the denial of appellate review because he failed to present these issues to the state courts.  He may now no

longer do so, because these claims are barred under Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

The Court finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–51 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour* v. *Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law.

23

Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner has failed to establish cause and prejudice for his procedural default of this portion of claim four. Moreover, the record fails to establish that this is an extraordinary case reflecting that Petitioner is actually innocent of the charges on which he was convicted so as to justify a merits review of his procedurally defaulted claims. *See Murray v. Carrier*, 477 U.S. at 491; *Sawyer v. Whitley*, 505 U.S. 333. To establish a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)); *see also Gulertekin v. Tinnelman–Cooper,* 340 F.3d 415, 427 (6th Cir. 2003). Petitioner has not done so here. In short, Petitioner's claim that his trial counsel was ineffective because his attorney failed to request joinder of trials and failed to call witnesses has been procedurally defaulted.

**Ineffective Assistance of Appellate Counsel**

Petitioner also alleges that he was denied the effective assistance of appellate counsel, arguing that he was denied meaningful access to appellate review because, essentially, the state appellate court denied his claims. Technically, this claim remains unexhausted because Petitioner never presented this claim to the state courts, and he may still do so by filing a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). Ordinarily, a petitioner must fairly present the substance of each constitutional claim to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). If the petitioner fails to fairly present his claims through the requisite levels of state appellate review, but still has an

avenue open to him in the state courts by which he may present the claims, his petition is subject to dismissal without prejudice for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(c).

The exhaustion requirement is not jurisdictional, however, and an application for a writ of habeas corpus may be denied on the merits notwithstanding a petitioner's failure to exhaust state remedies. 28 U.S.C. § 2254(b)(2). Petitioner's claim of ineffective assistance of appellate counsel plainly lacks merit. In the interest of judicial economy, then, the Court will address the issue here.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). The United States Court of Appeals for the Sixth Circuit has identified the following considerations that should be taken into account in determining whether appellate counsel performed reasonably competently:

> A. Were the omitted issues "significant and obvious?"
> B. Was there arguably contrary authority on the omitted issues?
> C. Were the omitted issues clearly stronger than those presented?
> D. Were the omitted issues objected to at trial?
> E. Were the trial court's rulings subject to deference on appeal?
> F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
> G. What was appellate counsel's level of experience and expertise?
> H. Did the petitioner and appellate counsel meet and go over possible issues?
> I. Is there evidence that counsel reviewed all the facts?
> J. Were the omitted issues dealt with in other assignments of error?
> K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427-28 (6th Cir. 1999).

Petitioner has failed to identify any potentially meritorious issues that his attorney should have raised on appeal, but did not.  His claim of ineffective assistance of appellate counsel therefore lacks merit.

**Recommended Disposition**

The Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

  *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
August 13, 2015

26